IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

EVAN B. CASEY,

                        Plaintiff,

v.

RENEE SCHUELER, ANGIE HODGE, SALAM SYED,
DR. LINDNER, FIONA GIBBONS, NURSE DENISE
VALERIUS, AND BRYAN GERRY,

                        Defendants.

OPINION and ORDER

18-cv-1002-jdp

---

Pro se plaintiff Evan B. Casey is proceeding on claims that prison staff at Columbia Correctional Institution delayed providing him medical treatment for his seizure disorder and an injury to his left wrist. Casey filed a motion for preliminary injunctive relief, to which defendants responded on May 24, 2019. Casey's reply brief was due on June 7, but he filed motions requesting that the court extend his time to file a reply brief, Dkt. 26, so that the court can recruit counsel to assist him, Dkt. 25. For the reasons below, I am denying plaintiff's motions.

Because Casey states that he does not intend to file a reply brief unless the court recruits counsel for him, I am addressing the merits of his motion for preliminary injunctive relief. I am denying the motion because Casey has failed to show a likelihood of success on the merits of his claim or that he will suffer irreparable harm without immediate injunctive relief.

ANALYSIS

**A. Casey's request for counsel**

A pro se litigant does not have a right to counsel in a civil case, *Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014), but a district court has discretion to assist pro se litigants in finding a lawyer to represent them. *Pruitt v. Mote*, 503 F.3d 647, 649 (7th Cir. 2007). A party who wants assistance from the court in recruiting counsel must meet certain requirements. *Santiago v. Walls*, 599 F.3d 749, 760–61 (7th Cir. 2010). First, he must show that he is unable to afford counsel. Because Casey is proceeding *in forma pauperis* under 28 U.S.C. § 1915, he has met that requirement.

Second, he must show that he made reasonable efforts on his own to find a lawyer to represent him. To satisfy this requirement, this court generally requires a plaintiff to show that he asked at least three lawyers to represent him in this case and that the lawyers either declined or failed to respond. Casey says that he has "attempted to contact four attorneys in the past 30 days and has not received any responses." Dkt. 25 at ¶ 9. But to show that his efforts were adequate, Casey must provide the names of the lawyers or law firms he contacted and the dates on which he contacted them.

Even I concluded that Casey met his burden to show that he made reasonable efforts to recruit counsel himself, Casey must also show that his is one of the relatively few cases in which it appears from the record that the legal and factual difficulty of the case exceeds the litigant's demonstrated ability to prosecute it. *Pruitt*, 503 F.3d at 654–55. "The question is not whether a lawyer would present the case more effectively than the pro se plaintiff" but instead whether the pro se litigant can "coherently present [his case] to the judge or jury himself." *Id.* at 655. Almost all of this court's pro se litigants would benefit from the assistance of counsel,

2

but there are not enough lawyers willing to take these types of cases to give each plaintiff one. I must decide for each case "whether this particular prisoner-plaintiff, among many deserving and not-so-deserving others, should be the beneficiary of the limited resources of lawyers willing to respond to courts' requests." *McCaa v. Hamilton*, 893 F.3d 1027, 1036 (7th Cir. 2018) (Hamilton, J., concurring).

Casey says that he needs a lawyer because he has only a high school education, he is untrained in the law, and because his claims involve medical issues, which can be complex and may require a medical expert. He also states that he has been in segregation with limited access to the law library. But it is simply too early to decide whether these are adequate grounds for seeking counsel in this case. Nearly all pro se litigants are untrained in the law and many of them are raising issues about medical care. There is no categorical rule that all prisoners challenging the adequacy of their medical care are entitled to counsel. *See Williams v. Swenson*, 747 F. App'x 432, 434 (7th Cir. 2019) (affirming district court's denial of request for counsel in medical care case); *Dobbey v. Carter*, 734 F. App'x 362, 364 (7th Cir. 2018) (same); *Romanelli v. Suliene*, 615 F.3d 847, 853 (7th Cir. 2010) (same).

It is also too early to determine whether Casey's claims are too complex for him to litigate on his own. His claims appear somewhat complex, as he is suing several defendants regarding the treatment he received for his seizure disorder and a wrist injury. But the law governing his claim is well established and was explained to him in the screening order. And at this point, it is not clear yet whether the case will turn on questions requiring medical expertise or will be resolved on evidence that can be obtained from Casey's medical records and his personal knowledge. *See, e.g., Redman v. Doehling*, 751 F. App'x 900, 905 (7th Cir. 2018)

3

("Redman could litigate his claims himself because they turned on historical facts as opposed to medical evidence").

Additionally, Casey's complaint and other filings have been clear and easy to follow. His submissions to date suggest that he is intelligent, understands the law, and is capable of explaining his version of events and making legal arguments. He managed to draft a motion and brief in support of preliminary injunctive relief that identified relevant facts and legal principles. In light of Casey's demonstrated abilities, I am not persuaded that Casey requires the assistance of counsel at this time. Therefore, I am denying his motion for court assistance in recruiting counsel.

Casey states that he is seeking an extension of time to file his reply brief only if the court decides to recruit counsel for him. Because I am denying his request for counsel, I will deny his request for an extension of time as well. Because Casey says that he will not file a reply brief unless the court recruits counsel for him, I will proceed to address the merits of his motion for preliminary injunctive relief.

**B. Casey's motion for preliminary injunctive relief**

In his motion for preliminary injunctive relief, Casey seeks a court order requiring defendants to schedule physical therapy for his wrist and to send him to see a specialist. Dkt. 4. He states in his declaration that although defendant Dr. Syed ordered physical therapy in July 2018, the health services unit (HSU) has failed to schedule it. In the interim, his wrist continues to hurt, and he is losing his ability to use it. Dkt. 5. In a previous order, Dkt. 18, I concluded that Casey had at least some evidence to show (1) a likelihood of success on the merits of his case; (2) a lack of an adequate remedy at law; and (3) an irreparable harm that

will result if the injunction is not granted. *See Lambert v. Buss*, 498 F.3d 446, 451 (7th Cir. 2007).

Defendants have responded by submitting medical records, Dkt. 22-1 and Dkt. 22-2, showing that Casey has received the following treatment for his wrist and arm pain:

- On April 11, 2018, Casey was seen by a nurse for a wrist injury that he said had occurred on April 5, 2018. The nurse noted a limited range of motion, but no swelling, redness, or bruising. The nurse offered ibuprofen, but Casey refused it.

- On April 19, 2018, Casey was seen by Dr. Syed. Casey reported left wrist pain, and Dr. Syed ordered a brace and prescribed acetaminophen.

- On April 25, 2018, Casey received the brace but was dissatisfied with it because it did not have hard plastic or metal to support his wrist.

- On May 7, 2018, Casey was seen by a nurse for continued complaints of wrist pain. The nursing encounter note states that Casey was not presently in pain and had full range of motion. Casey was advised to rest his wrist, that soft tissue injuries can take time to heal, and that he should follow up with the HSU in three to four weeks if his wrist still hurt.

- On May 31, 2018, Casey was brought to the HSU by security because he had cut himself on his left arm. He received stitches.

- On June 4, 2018, Casey received Steri-Strips on his arm because he had removed his stitches.

- On June 5, 2018, Casey received ibuprofen.

- On July 9, 2018, Casey was seen again for complaints of wrist pain and swelling. The HSU note states that no swelling was observed.

- On July 10, 2018, an x-ray was taken of Casey's wrist and hand by an outside provider. The radiology report states that "[t]here is no radiographic evidence of acute disease in the left wrist" or hand. Dkt. 22-1 at 290.

- At an August 3, 2018 visit, a nurse noted that Casey's wrist had a normal range of motion.

- A November 2, 2018 nursing encounter note states that Casey complained of left wrist pain and left arm numbness and that he received a brace.

5

- A November 20, 2018 medical note states that the plan of care for Casey's wrist included duloxetine and an electromyography (EMG), which is a diagnostic procedure used to assess the health of muscles and nerve cells.

- On December 14, 2018, Casey was seen in HSU for his concern about wounds to his left arm.

- On January 11, 2019, Casey was seen against because the wound on his left arm had reopened. A nurse applied Steri-Strips and a band-aid.

- A January 15, 2019 medical note states that Casey was evaluated for wrist pain and numbness. The note states that Casey had a full range of motion and that Casey was scheduled for an offsite appointment. Casey was prescribed Naproxen, a pain reliever.

- On January 29, 2019, staff at University of Wisconsin Health called HSU and cancelled a previously scheduled January 30, 2019, appointment regarding his left wrist pain due to inclement weather.

- On March 15, 2019, Casey received an EMG at University of Wisconsin. The results of the EMG were within "normal" ranges and showed "no evidence of left/focal entrapment neuropathy, brachial plexopathy, or cervical radiculopathy." Dkt. 22-2.

- On May 2, 2019, Casey was seen by Dr. Roman Kaplan at the prison. Dr. Kaplan noted that Casey had a "history of several evaluation[s], negative x-ray, negative EMG." Kaplan evaluated Casey's left wrist and noted, among other things, a full range of motion, no signs of carpal tunnel syndrome, normal blood supply, and full strength. Kaplan concluded that there was currently no need for treatment. Dkt. 22-1 at 57.

In light of this extensive treatment record, Casey cannot succeed on his request for preliminary injunctive relief. "A preliminary injunction is an extraordinary equitable remedy that is available only when the movant shows clear need." *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). Casey has not submitted any evidence to show that he has a clear need for preliminary injunctive relief, besides his own statements that he has his wrist pain and a limited range of motion and that Dr. Syed recommended physical therapy in July 2018. In

contrast, defendants' evidence shows that Casey has been seen multiple times by HSU staff and UW physicians and that he has received a brace, several kinds of pain medications, an x-ray examination, and an EMG of his left wrist. The objective diagnostic tests, which occurred after Syed's recommendation for physical therapy, show no abnormalities, and Casey's treating physician, Dr. Kaplan, has concluded that no treatment is necessary at this time. In sum, Casey has not shown that he is likely to succeed on his claim that defendants are acting with deliberate indifference to his serious medical needs or that he will suffer irreparable harm without an injunction. Therefore, I am denying his motion for preliminary injunctive relief.

ORDER

IT IS ORDERED that plaintiff Evan B. Casey's motions for a preliminary injunction, Dkt. 4, motion for court assistance in recruiting counsel, Dkt. 25, and motion for an extension of time, Dkt. 26, are DENIED.

Entered June 18, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge